## IN THE UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **THEC International-Hamdard Cordova Group-Nazari Construction Company, Ltd. Joint Venture**<br>Wazir Akbar Khan<br>Kabul, AFGHANISTAN<br><br>　　　　　　*Plaintiff*,<br>vs.<br><br>**Cohen Mohr, LLP**<br>1055 Thomas Jefferson Street, NW<br>Washington, DC 20007<br><br>**Abdul H. Rakin**<br>9667 Poindexter Court<br>Burke, Virginia 22015-1868<br><br>　　　　　　*Defendants*. | Case No. _____<br><br>**COMPLAINT**<br>for<br>Fraud<br>Conversion<br>Civil Conspiracy<br>Negligence<br>Tortious Interference with the Contract<br>Breach of Fiduciary Duty<br><br>Punitive Damages and<br>Jury Trial Requested |

Comes now the THEC International-Hamdard Cordova Group-Nazari Construction Company, Ltd. Joint Venture ("THN"), to complain of fraud, conversion, civil conspiracy, tortious interference with the contract, negligence, and breach of fiduciary duty by the law firm Cohen Mohr, LLP ("Defendant Cohen Mohr") and Adul Hadi Rakin ("Defendant Rakin"). These claims relate to, among other things, Defendant Cohen Mohr and Defendant Rakin falsely representing that Cohen Mohr, LLP was the attorney-in-fact to THN. By this false representation, $3,582,000.00 earned by THN for road construction in Afghanistan was wrongfully transferred to Defendant Rakin.

## PARTIES TO THE ACTION

1.      **Defendant Cohen Mohr** is a law firm in the District of Columbia located at 1055 Thomas Jefferson Street, NW, Washington, DC 20007.

2.      **Defendant Abdul Rakin** is, on information and belief, a resident alien of the United States domiciled at 9667 Poindexter Court, Burke, Virginia.

3.      **Plaintiff THN** is an Afghan-based joint venture located at Wazir Akbar Khan, Kabul Afghanistan.   THN was established on August 8, 2010 between Nazari Construction Company, Ltd. ("NCCL"); Hamdard Cordova Group ("HCG") and THEC International ("THEC").  Serving on the board of directors of THN are Shir Mohammad Nazari of NCCL, Gul Rahman Hamdard of HCG, and Abdul Hadi Rakin of THEC.

## JURISDICTION AND VENUE

4.      The jurisdiction of the United States District Court for the District of Columbia is warranted under 28 U.S. Code § 1332 (a)(2)  as the matter in controversy exceeds $75,000.00 involves a resident of the District of Columbia and citizens of the Islamic Republic of Afghanistan.  There exists complete diversity of citizenship between and among the Parties.  Defendant Cohen Mohr is located in the District of Columbia and regularly transacts business in the District of Columbia including, but not limited to, transacting business with Defendant Rakin who, thus, is also subject to the personal jurisdiction of this Court.  In addition, a substantial part of the acts and omissions giving rise to the harm suffered by Plaintiff arose in the District of Columbia.

5.      Venue is proper in the United States District Court for the District of Columbia under 28 U.S. Code § 1391 (b) as Cohen Mohr is a law firm located in the

District of Columbia, Defendant travelled to or sent communications to Defendant Cohen

Mohr in the District of Columbia and a substantial part of the events or omissions with

respect to the allegations made in this complaint occurred in the District of Columbia.

## FACTUAL ALLEGATIONS

6.      On January 19, 2010, a Joint Venture called "FMCC-THEC-HCG Joint

Venture" entered into a Subcontract No. SPR-TO-07-CO9B-2010, "Design and

Construction of Road #9B – Kolalgu to Gardez in Paktya Province," ("the Subcontract")

with respect to International Relief & Development, Inc. ("IRD") Contract No. 306-A-

00-08-00509-00, "Strategic Provincial Roads Project Southern and Eastern Afghanistan

("SPR-SEA") awarded by the U.S. Agency for International Development.

7.      The business of the FMCC-THEC-HCG Joint Venture concluded when

disagreement arose between FMCC and the other members of the joint venture, THEC

and HCG.

8.      The tasks and responsibilities of FMCC were replaced by NCCL and a new

joint venture, THN was established in its place on August 8, 2010.

9.      THN became the successor in interest to the Subcontract and was

recognized as such by IRD.

10.     The business of THN was to continue performance of the Subcontract.

11.     THN substantially performed all of its obligations under the Subcontract.

12.     THN was governed by the August 8, 2010 Joint Venture Agreement (the

"JV Agreement").

13.     The JV Agreement, at Section 5.1, "Management," stated that "[t]he management of the Joint Venture shall be conducted pursuant to policy established by the Parties acting through a 'Board of JV' which is hereby established."

14.     The JV Agreement, at Section 5.2, "Authorities," states "[a]ll significant decisions shall be made by JV Board of Directors.  (Mr. Abdul Hadi Rakin, Gul Rahman Hamdard and Shir Mohammad Nazari)."

15.     The JV Agreement, at Section 7.1, "Deposits," states "[a]ll Working Capital or other funds received by the Joint Venture in connection with the performance of the project shall be deposited in a Checking Account, set up especially for the Joint Venture, and requiring the joint signatures of the parties for any withdrawals.  Said accounts shall be kept separate and apart from any other accounts of the Venturers."

16.     The JV Agreement, Section 9, "Point of Contact," states clearly:

> 9.  **Point of Contacts**
> The venturers point of contact are as following.
>
> **Nazari Construction Company Limited (NCCL)**
> Point of contact:          Shir Mohammad Nazari
> Email Add:                 info@nazariconstruction.com
> Phone #:                   +93 (0)799 21 7064
>                            +93 (0)799 69 1000
>
> **THEC International (THEC)**
> Point of Contact:          Abdul Hadi Rakin
> E-mail Add:                arakin@fth.af and ahrakin@gmail.com
> Phone #:                   +93 (0)787 55 3755
>
> **Hamdard Cordova Group (HCG)**
> Point of Contact:          Gul Rahman Hamdard
> E-mail Add:                g.hamdard@gmail.com
> Phone #:                   +93 (0)777 60 6060

17.     Thus, it was clear to Defendant Cohen Mohr that the only legitimate points of contact within THN, other than Defendant Rakin, were Shir Mohammad Nazari of NCCL and Gul Rahman Hamdard of HCG.

18.     THN experienced difficulty in obtaining payment from IRD.

19.     Defendant Rakin engaged in unknown communications with IRD.

20.     Defendant Rakin and Defendant Cohen Mohr represented to IRD that Cohen Mohr was the attorney in fact for THN.

21.     The decision of whether to retain Cohen Mohr as attorney in fact for THN is a significant decision.

22.     Contrary to the requirements of Section 5.2 of the JV Agreement, the question of whether to retain Cohen Mohr as attorney in fact for THN was not submitted for decision by the THN JV Board of Directors.

23.     The decision of whether Cohen Mohr should engage in negotiations with IRD with respect to missing IRD payments under the Subcontract was a significant decision.

24.     Contrary to the requirements of Section 5.2 of the JV Agreement, the question of whether Cohen Mohr should engage in negotiations with IRD with respect to missing IRD payments under the Subcontract was not submitted for decision by the THN JV Board of Directors.

25.     The decision of what offer of settlement to make to IRD on behalf of THN was a significant decision.

26.     Contrary to the requirements of Section 5.2 of the JV Agreement, the question of what offer of settlement to make to IRD was not submitted for decision by the THN JV Board of Directors.

27.     The decision to have settlement procedes with respect to the THN-IRD dispute deposited into a non THN bank account was a significant decision.

28.     Contrary to the requirements of Section 5.2 of the JV Agreement, the question whether to allow the deposit of IRD's payment to THN to be placed in a non-THN-controlled bank account was never submitted for decision by the THN JV Board of Directors.

29.     Defendant Rakin and Defendant Cohen Mohr represented to IRD that Cohen Mohr was the attorney in fact for THN.

30.     Through communications facilitated by Defendant Cohen Mohr, Defendant Rakin communicated payment information to IRD for fulfilment of its payment obligations under the subcontract.

31.     The payment information consisted of information on how IRD could wire $3,582,000.00 to an account controlled by Defendant Rakin and/or THEC.

32.     On or about March 31, 2014, THN Board Member Hamdard learned that IRD was about to make final payment under the Subcontract yet this final payment was not going to be deposited into a THN-controlled account.

33.     On March 31, 2014, THN Board Member Hamdard sent an email to Barazan K. Ismaeel of IRD, Chief of Party, USAID Strategic Provincial Roads – Southern & Eastern, IRD.  In the email, Board of Director Hamdard wrote:

IRD aproved some amount for final payment for road 9B.  I suggest this money should come to JV account and not to any personal account or to the account which will submit from partner.

34.     By this email, THN JV Board Member Hamdard specifically requested that the final payment for the Subcontract be deposited into an THN-controlled bank account.

35.     That same day, Mr. Ismaeel answered THN Board Member Hamdardby email as follows:

Dear Gul Rahman, Thank you for your email.  I suggest you get in contact with our General Counsel, Mr. Jason Matechak, to address the issue quickly today.  I hope the proces goes smooth with the agreement of all partners.

36.     Thus, on March 31, 2014, IRD was on notice that the settlement funds should be deposited into a THN-controlled bank account and no other account.

37.     Immediately, THN Board Member Hamdard emailed Jason Matechak.  He stated:

Dear Mr. Jason . . . I hope this note find you in good spirit.  My name is Gul Rahman onwer of HCG company I would like to inform the finally payment should come to JV account not to any personal account . . . Thanks Gul.

38.     On information and belief, Defendant Cohen Mohr attorney Andrew Wible received a copy of this email.

39.     Thus, as of March 31, 2014, IRD and Defendant Cohen Mohr were on notice that the IRD-THN Subcontract settlement funds should go to a THN-controlled bank account.

40.     On March 31, 2014, Mr. Matechak wrote back to THN JV Board of Director Hamdard:

Thank you for your message.  IRD is being very careful in this regard.  I have requested a letter signed by all of the JV partners indicating where the final amount should be paid.  I have also requested a copy of the current AISA license so that the appropriate amount of tax can be withheld.  We hope to have this issue resolved today if possible as today is the last day of the SPR award.

41.     On information and belief, Defendant Cohen Mohr attorney Andrew Wible received a copy of this email.

42.     Thus, as of March 31, 2014, Jason Matechak had requested that a letter issue, to be signed by all of the THN JV partners indicating where the final IRD Subcontract settlement amount should be paid.

43.     On April 2, 2014, THN JV Board Member Hamdard emailed Jason Matechak, stating:

Dear Jason . . . .We have not signed any document regarding payment sould to to the thec account if money go to Rakin account it will big problem please understand I'm the owner of HCG company however I asked Rakin money should come to Afghanistan but I heard to want money to be transfer to thec account please replay the statutes of payment.

44.     Thus, on April 2, 2014, IRD was on notice that HCG had not executed any document consenting to the learned-of payment.  Moreover, THN JV Board Member Hamdard was explicit in stating that deposit into an account controlled by Defendant Rakin would pose a big problem.

45.     On April 3, 2014, THN Board Member Hamdard received a reply email from Jason Matechak that stated:

Dear Mr. Gul – I have been provided a copy of a released signed by each of the Joint Venture partners indicating where the payment should be made.  The release was forwarded to me by the Joint Venture's counsel at the Cohen and Mohr law firm.   The name provided on the relase as an

authorized representative of HCG was Yama M Erman.  I would suggest that you connect with Mr. Eamen and Defendant Rakin regarding the payment.

46.     Defendant Cohen Mohr attorney Andrew Wible was included on the "cc:" line of this email.

47.     Thus, by April 3, 2014, Defendant Cohen Mohr had represented to IRD that it was the attorney in fact for THN, it had supplied IRD documents purporting to justify depositing the IRD-THN Subcontract settlement proceeds into a bank account controlled by Defendant Rakin and/or THEC, and had taken all of these actions without obtaining any clearance to do so from the THN JV Board of Directors.

48.     The representation that Defendant Cohen Mohr, LLP represented THN was false.  The THN board of directors was never asked to approve, or provide their approval for Defendant Cohen Mohr to serve as attorney in fact for THN.

49.     The representation that HCG had approved the payment on behalf of THN through THEC was also false.  THN Board Member Hamdard, as owner of HCG, was the only person authorized to execute a release on behalf of HCG.

50.     Defendant Cohen Mohr made no inquiry with Gul Rahman Hamdard regarding who might be authorized to bind the company with respect to a release.

51.     In direct contravention of the explicit, written request by THN Board Member Hamdard, as copied to Defendant Cohen Mohr's attorney Andrew Wible, $3,582,000.00 was transferred from IRD to an account controlled by Defendant Rakin and/or THEC representing final payment to THN for the IRD road construction project.

52.     Despite repeated requests by the other board members of THN, Defendant Rakin has refused to transfer the $3,582,000.00 to THN.

53.     In response to correspondence sent by HCG, through counsel, to Defendant Rakin, Andrew Wible stated as follows:

> This law firm represents FMCC-THEC-HCG, JV (the "JV"), and I am writing to you in response to your letter to Abdul Rakin dated August 10, 2015, purportedly on behalf of Hamdard Cordova Group ("HCG"), in which you falsely accuse Mr. Rakin of theft from HCG, the JV, and even Mr. Rakin's own company, THEC.
>
> While your letter is scant on details, it is clear that your briefing by Mr. Rahman was materially incomplete and inaccurate. While I do not represent Mr. Rakin in his individual capacity, your allegations against him necessarily involve the JV, and are absolutely without any basis in fact or law. Please contact me at your convenience so that we may discuss this matter.

54.     FMCC-THEC-HCG JV has not existed since August 8, 2010.

55.     HCG's communication, through counsel, was directed at Defendant Rankin, individually; it was not a communication directed at THN.

56.     Following receipt of this correspondence, counsel for HCG requested that Defendant Cohen Mohr send to HCG, through counsel, a copy of the retention agreement describing the authority for Defendant Cohen Mohr's purported representation of THN and the scope of Defendant Cohen Mohr's representation of THN.

57.     As a member of THN (and even as a member of FMCC-THEC-HCG JV), HCG's request for a copy of the retention agreement requested was reasonable

58.     Defendant Cohen Mohr refused to provide HCG a copy of the retention agreement by which it based its assertion that it represented THN (or, for that matter, FMCC-THEC-HCG of which HCG was also a member).

59.     In correspondence from HCG (through counsel) to Defendant Cohen Mohr, HCG requested that Cohen provide to it all documentation leading Defendant Cohen Mohr to conclude that the settlement it had brokered with IRD was "duly" authorized. Defendant Cohen Mohr has refused to provide HCG with any such documentation.

60.     In correspondence from HCG (through counsel) to Defendant Cohen Mohr, HCG requested that Defendant Cohen Mohr provide it all documentary evidence giving rise to Defendant Cohen Mohr's conclusion that HCG "certified" the disbursement of funds into the THEC account.  Defendant Cohen Mohr has refused to provide HCG with any such documentation.

61.     In correspondence from HCG (through counsel) to Defendant Cohen Mohr, HCG requested that Defendant Cohen Mohr provide to it all of the email correspondence between Mr. Rakin and Defendant Cohen Mohr given Defendant Cohen Mohr's statement that it did not represent Mr. Rakin individually.  Defendant Cohen Mohr has refused to provide HCG with any such email correspondence.

62.     In correspondence from HCG (through counsel) to Defendant Cohen Mohr, HCG requested that Defendant Cohen Mohr provide to it copies of any and all invoices from Cohen Mohr and all evidence of payment to Cohen Mohr by the joint venture. Defendant Cohen Mohr has refused to provide HCG with any such invoices or evidence of payment.

63.     In correspondence from HCG (through counsel) to Defendant Cohen Mohr, HCG requested that Defendant Cohen Mohr provide to it the exact location of the $3,582,000.00 that purported to be payment from IRD and it requested that Defendant

Cohen Mohr provide to it with information related to Abdul Rakin's location.  Defendant Cohen Mohr has refused to provide HCG with any information about the identity of the bank account into which the $3,582,000.00 had been deposited or information on how Abdul Rakin could be located.

64.     On August 21, 2015, Andrew Wible of Defendant Cohen Mohr stated, "This firm['s] contact with FTH has always been through its appointed and authorized representative, Mr. Rakin.  To the best of my knowledge and recollection, we have never had any direct communications with any other member."

65.     Thus, Defendant Cohen Mohr admitted that it had never had any direct contact with any member of the joint venture comprised of NCCL, THEC, and HCG.

66.     Defendant Cohen Mohr has refused to establish the process by which Defendant Rakin was authorized, solely, to speak on behalf of THN.

67.     Defendant Cohen Mohr has refused to describe the process by which Defendant Rankin's authority, whatever its status, could be considered a "due" authorization.

68.     Pursuant to a meeting of the THN Board of Directors of on September 26, 2015, The Law Office of Joseph Hennessey, LLC ("LOJH") was been retained for the purpose of ensuring that payments made from IRD pursuant to the Subcontract are deposited into a THN controlled bank account.

69.     On October 22, 2015, LOJH wrote to Defendant Cohen Mohr to request a transfer of the client file to LOJH.  Defendant Cohen Mohr has refused to transfer the requested files.

12

**COUNT I**
**Fraud**
**As to All Defendants**

70.     Plaintiff THN incorporates paragraphs 1-69 into the allegations of Count I as if fully pled herein.

71.     Defendant Cohen Mohr made false representations.  Specifically, Cohen Mohr represented to IRD and other third parties that it was the attorney in fact for THN.

72.     Defendant Rakin made false representations.  Specifically, Defendant Rakin represented to IRD and other third parties that Cohen Mohr was the attorney in fact for THN.

73.     Defendant Cohen Mohr knew that its representation that Cohen Mohr was the attorney in fact for THN was false.  Specifically, Cohen Mohr knew that it had not obtained consent of the members of the joint venture, represented by the board of directors, for Cohen Mohr to serve as the attorney in fact for THN.  To the extent that Cohen Mohr was grossly negligent in establishing that it was the attorney in fact of THN, it knowingly misrepresented that it was the attorney in fact for THN as of March 31, 2014 or April 2, 2014 when it was privy to communications to and from THN Board Member Hamdard giving rise to notice that Cohen Mohr was not attorney in fact for THN.

74.     Defendant Cohen Mohr and Defendant Rakin knew that their false representations were material.  By representing that Cohen Mohr was the attorney in fact for THN, Cohen Mohr communicated to IRD and other third parties that it was authorized to communicate for, negotiate on behalf of, and bind THN.

75.     Defendant Rakin knew that his representations were false.  Specifically,

Defendant Rakin knew that he did not have the consent of the other members of the joint

venture, as was required by a meeting of the board of directors of THN and a vote by the

members of the board of directors to formally retain Cohen Mohr, for Cohen Mohr to

serve as attorney in fact for THN.

76.     Defendants Rakin and Cohen Mohr intended to deceive IRD and other third

parties.  Specifically, Defendant Cohen Mohr and Defendant Rakin intended to deceive

IRD into authorizing payment that should have been made to THN to Defendant Rakin

individually.

77.     Actions were taken in reliance upon Defendant Cohen Mohr and Defendant

Rakin's misrepresentations.  Specifically, in reliance on Defendants misrepresentations,

IRD made payment – payment that should have been made to THN – to Defendant Rakin

individually.

78.     THN was damaged by this misrepresentation.  Specifically, $ 3,582,000.00

that should have been paid to the joint venture collectively was paid, instead, to

Defendant Rakin and/or THEC individually.

79.     THN has been damaged by Defendant Cohen Mohr and Defendant Rakin's

fraud in an amount to be proven at trial yet not less than $3,582,000.00.

80.     WHEREFORE, THN prays that the Court will find Defendant Cohen Mohr

and Defendant Rakin joint and severally liable for the damages claimed and order

Defendant Cohen Mohr and Defendant Rakin to make immediate restitution, pay

14

damages to THN, pay punitive damages to THN, and order any and all other legal and equitable relief necessary or discretionary to effect complete justice as to Count I.

**COUNT II**
**Conversion of $3,582,000.00**
**As to Defendant Rakin**

81.     Plaintiff THN incorporates paragraphs 1-80 into the allegations of Count II as if fully pled herein.

82.     Defendant Rakin communicated with IRD in such a manner as to secure a sum certain, $3,582,000.00 as a payment for services performed by THN.

83.     As a sum certain, the $3,582,000.00 is considered chattel.

84.     THN has a property/chattel interest in the sum certain of $3,582,000.00.

85.     Instead of delivering over to THN, the rightful owner of the sum certain $3,582,000.00, Defendant Rakin converted this sum certain to his own purposes and continues to exercise dominion and control over this chattel sum of $3,582,000.00.

86.     WHEREFORE, THN prays that the Court declare that Defendant Rakin is liable for the tort of conversion of the $3,582,000.00 and orders Defendant Rakin to transfer that sum to THN, plus interest and the payment of any additional damages, to be proven at trial, incurred by THN consequent to Defendant Rakin's conversion of the $3,582,000.00.

**COUNT III**
**Civil Conspiracy**
**As to All Defendants**

87.     Plaintiff THN incorporates paragraphs 1-86 into the allegations of Count III as if fully pled herein.

88.     An agreement existed between Defendant Cohen Mohr and Defendant Abdul Rakin to secure for Defendant Rakin a payment by IRD that should have been made to THN.  Specifically, Defendant Cohen Mohr made an agreement such that Cohen Mohr would be represented to third parties, including IRD, as the attorney in fact for THN.

89.     Defendant Cohen Mohr and Defendant Rakin entered into an agreement wherein Cohen Mohr would represent to third parties that Defendant Rakin was the "duly authorized" representative of THN.

90.     By these representations, Defendant Cohen Mohr and Defendant Rakin entered into a common scheme to divert IRD payments that should have been made to THN to Defendant Rakin and/or the company he controlled, THEC.

91.     By the agreement whereby Defendant Rakin represented Cohen Mohr as the attorney in fact of THN and Defendant Cohen Mohr represented Defendant Rakin as the "duly authorized" representative of THN, Defendant THN and Defendant Cohen Mohr undertook a common scheme whereby the two, acting in concert, could achieve the fraud by which at least $3,582,000.00 that should have been and legally should have been paid to THN was diverted into a bank account controlled by Defendant Rakin and/or THEC.

16

92.     This agreement was unlawful in that Defendant Cohen Mohr was not the attorney in fact of THN and Defendant Rakin was not the "duly authorized" representative of THN.

93.     Defendant Cohen Mohr undertook overt acts in furtherance of the common scheme.  Specifically, Cohen Mohr sent communication(s) to IRD identifying itself as the attorney in fact for THN.  In addition, Defendant Cohen Mohr made the overt act of directing IRD to send payment to a bank account controlled by Defendant Rakin and/or THEC where such payment should have been made directly to THN.  In addition, Defendant Cohen Mohr undertook the overt act of representing to third parties that Defendant Ranking was the "duly authorized" representative of THN.

94.     Defendant Rakin undertook overt acts in furtherance of the common scheme including affirmatively representing to IRD and other third parties that Defendant Cohen Mohr was the attorney in fact for THN and affirmatively communicating to IRD and third parties in a manner that would achieve the diversion of $3,582,000.00 from THN to Defendant Rakin.

95.     WHEREFORE, THN prays that the Court will declare that Defendants engaged in a civil conspiracy to defraud THN, convert THN's property, interfere with THN's contractual relationships, and breach fiduciary duties owed to THN.  Having declared such a conspiracy, THN prays that the Court will order whatever relief is necessary or proper, in law or in equity, to provide complete relief to THN for having been victimized by Defendants' civil conspiracy.

17

## COUNT IV
### Negligence as to Cohen Mohr
### (pled in the alternative to Fraud)

96.     Plaintiff THN incorporates paragraphs 1-69 into the allegations of Count IV as if fully pled herein.

97.     Defendant Cohen Mohr is a law firm in the District of Columbia.

98.     Law firms in the District of Columbia must adhere to a standard of care with respect to representing clients and serving as an attorney in fact with respect to representations to third parties.

99.     Attorneys practicing in the District of Columbia have a duty to know the identity of their clients.

100.    Attorneys practicing law in the District of Columbia have a duty to make reasonable inquiries with respect to ascertaining whether they are authorized to represent a client and/or authorized to engage in communications upon which third parties are entitled to rely.

101.    Joint ventures are typically governed by joint venture agreements. Typically, joint venture agreements describe how decisions are made on behalf of the members of the joint venture.

102.    THN was governed by a joint venture agreement.  The joint venture agreement described how decisions would be made by the members of THN.

103.    On information and belief, Cohen Mohr never obtained a copy of the THN Joint Venture Agreement.

104.    In the alternative, Defendant Cohen Mohr obtained a copy of the THN Joint Venture Agreement yet ignored its terms.

105.    In the alternative, Defendant Cohen Mohr did not know that what it thought to be its former client FMCC-THEC-HCG, JV had ceased to exist and had been replaced by THN.

106.    As a consequence of not knowing that what it thought to be its client FMCC-THEC-HCG, JV had ceased to exist, Defendant Cohen Mohr did not know that other documents, documents germane to the governance of the new joint venture THN, controlled the question of whether it could serve as attorney in fact for THN in negotiations with IRD.  In other words, Defendant Cohen Mohr was completely ignorant regarding the factors that determined whether or not it could represent itself to third parties as attorney in fact with respect to negotiations with IRD and the transfer of funds to a bank account controlled by Defendant Rakin and/or THEC.

107.    By ignoring the terms of the THN Joint Venture Agreement, Defendant Cohen Mohr did not engage the provisions of Section 5.2 of the THN Joint Venture Agreement wherein "[a]ll significant decisions shall be made by JV Board of Directors."

108.    By ignoring the terms of the THN Joint Venture Agreement, Defendant Cohen Mohr ignored the provisions of Section

109.    Contrary to the applicable duty of care, Defendant Cohen Mohr made little to know inquiry to determine whether the members of THN had, in fact, authorized Defendant Cohen Mohr to serve as the attorney in fact to THN.

110.    As a consequence of Defendant Cohen Mohr's negligence, THN has been damaged.  Specifically, by failing to exercise a standard of care with respect to its intended client THN – among other things failing to secure the consents needed to truthfully represent to third parties that Defendant Cohen Mohr was the attorney in fact for THN, failing to communicate with the board of directors of THN regarding representations being made to third parties with respect to payment obligations owed to THN, and assuming, without critical analysis, that the simple assertion by Defendant Rakin that he had the ability, singularly, to authorize Defendant Cohen Mohr to serve as the attorney in fact for THN – THN was denied the bargained benefit of its labors, i.e. payment for its services under the Subcontract.

111.    WHEREFORE, THN prays that the Court find THN was negligent with respect to its duty of care as a law firm doing business in the District of Columbia; find Defendant Cohen Mohr liable for the direct and consequential damages suffered by THN proximately caused by Defendant Cohen Mohr's negligent conduct; order Defendant Cohen Mohr to pay restitution in the amount of $3,582,000.00, at a minimum; order Defendant Cohen Mohr to pay damages in amount to be proven at trial, yet not less than $3,582,000.00; and order whatever other legal or equitable relief is necessary or discretionary so that complete justice can be realized by THN in this case.

**COUNT V**
**Tortious Interference with the Contract between IRD and THN**
**As to Cohen Mohr**

112.    Plaintiff THN incorporates paragraphs 1-95 into the allegations of Count V as if fully pled herein.

113.    As previously stated, the Subcontract created payment obligations by IRD to THN.

114.    Defendant Cohen Mohr knew of the Subcontract between THN and IRD; specifically, Cohen Mohr represented that it was the attorney in fact for THN in negotiations with IRD regarding the Subcontract.

115.    Defendant Cohen Mohr intentionally interfered with the contractual relationship between IRD and THN by wrongfully representing that it was the attorney in fact for THN and, on the basis of that wrongful representation, directing IRD to make payment to Defendant Rakin and/or THEC.

116.    THN has been damaged by Defendant Cohen Mohr's interference with its contractual relationship with IRD because a $3,582,000.00 payment, purportedly intended by IRD as payment to THN, was not made to THN.

117.    WHEREFORE, THN prays that the Court will Order Defendant to pay an amount of damages to be proven at trial, yet not less than $3,582,000.00, to compensate THN for the damages it has suffered as a consequence of its tortious interference with the contract between IRD and THN.

## COUNT VI
### Tortious Interference with the THN Joint Venture Agreement
### As to Cohen Mohr

118.    Plaintiff THN incorporates paragraphs 1-95 into the allegations of Count VI as if fully pled herein.

119.    As previously stated, the Subcontract created payment obligations by IRD to THN.

120.    Defendant Cohen Mohr knew, or should have known about the THN Joint Venture Agreement entered into between and among THEC, HCG, and NCCL.

121.    Under the Joint Venture Agreement, THEC had obligations, elsewhere herein described, to deposit monies intended as payment to THN into a bank account held by THN.

122.    By wrongfully representing itself as the attorney in fact to THN, Defendant Cohen Mohr caused payment intended for THN to be made into a bank account controlled by Defendant Raking and/or THEC.

123.    Defendant Cohen Mohr intentionally interfered with the contractual relationship between IRD and THN by wrongfully representing that it was the attorney in fact for THN and, on the basis of that wrongful representation, directing IRD to make payment to Defendant Rakin and/or THEC.

124.    THN has been damaged by Defendant Cohen Mohr's interference with its contractual relationship with IRD because a $3,582,000.00 payment, purportedly intended by IRD as payment to THN, was not made to THN.

125.    WHEREFORE, THN prays that the Court will find that Defendant Cohen

Mohr tortuously interfered with the THN Joint Venture Agreement and Order Defendant

to pay an amount of damages to be proven at trial, yet not less than $3,582,000.00, to

compensate THN for the damages it has suffered as a consequence of its tortious

interference with the contract between IRD and THN.

### COUNT VII
**Breach of Fiduciary Duty**
**As to Defendant Rakin**

126.    Plaintiff THN incorporates paragraphs 1-95 into the allegations of Count

VII as if fully pled herein.

127.    As a member of the board of directors to THN bound by the explicit terms

of the THN Joint Venture Agreement, Defendant Rakin has fiduciary duties to THN;

specifically, Defendant Rakin is obligated to deposit payments from IRD under the

Subcontract into a THN bank account.

128.    Defendant Rakin breached his explicit fiduciary duty by directing that

payment by IRD for work performed by THN be diverted into bank accounts controlled

by Defendant Rakin and/or THEC.

129.    As a direct proximate cause of Defendant Rakin diverting IRD payments to

a bank account that is controlled by him and/or THEC, THN has been damaged due to

lack of anticipated income.

130.    WHEREFORE, THN prays that the Court will find that Defendant Rakin

has breached his fiduciary duties to THN and that the Court will Order Defendant Rakin

to pay damages, to be proven at trial, to compensate THN for the loss of income

occasioned by Defendant Rakin's breach, including Ordering that Defendant Rakin

deposit the $3,582,000.00 intended as payment by IRD into a bank account controlled by

THN.

## COUNT VIII
### Breach of Fiduciary Duty
### (Pled in the Alternative)
### As to Cohen Mohr

131.   THN pleads Count VIII in the alternative, i.e., in the event that the jury or

the Court should find that Defendant Cohen Mohr legitimately served as attorney in fact

to THN.

132.   If it is the case that Defendant Cohen Mohr served, legitimately, as the

attorney in fact for THN, THN owed certain fiduciary duties to THN.  Specifically,

Defendant Cohen Mohr had a fiduciary duty to ensure that monies earned by THN under

the Subcontract were actually deposited into a bank account controlled by THN.

133.   However, contrary to this obligation, Defendant Cohen Mohr arranged for

the monies to be paid by IRD into a non-THN controlled bank account.

134.   As a consequence of Defendant Cohen Mohr working to obtain a

$3,582,000.00 payment from IRD for work under the Subcontract performed by THN,

yet arranging for or allowing that payment to be deposited into a non-THN-controlled

bank account, Defendant Cohen Mohr breached its fiduciary duty to THN.

135.   THN has been damaged as a direct proximate cause of Defendant Cohen

Mohr's breach of its duty to ensure that monies earned by THN under the Subcontract

were deposited into a THN-controlled bank account; specifically, $3,582,000.00 that

should have been paid to THN for services under the Subcontract was not paid to THN for services under the Subcontract.

136.    WHEREFORE, in the event that the Court or the jury determines that Defendant Cohen Mohr legitimately served as THN's attorney in fact, THN prays that the Court find that Defendant Cohen Mohr breached its fiduciary duties to THN and the Court Orders Defendant Cohen Mohr to pay THN damages in an amount to be proven at trial, including but not limited to the payment of $3,582,000.00 that should have been realized by THN from Defendant Cohen Mohr's work as THN's attorney in fact.

## PUNITIVE DAMAGES
### As to Cohen Mohr

137.    Plaintiff THN incorporates paragraphs 1-95, 112-136 into this request that punitive damages be assessed against Defendant Cohen Mohr.

138.    On or about March 31, 2014, Defendant Cohen Mohr had actual, specific knowledge that a THN JV Board Member, Gul Rahman Hamdard (whose company HCG was both a member of the FMCC-THEC-HCG Joint Venture and THN), disclaimed the existence of documents justifying the waiver of claims against IRD and objected to the manner of payment proposed by IRD and represented by IRD as having the approval of Defendant Cohen Mohr.

139.    Instead of stopping the proposed transaction to ensure that the  payment by IRD was in accordance with the actual wishes of THN (instead of singularly the wish of Defendant Rakin), Defendant Cohen Mohr allowed IRD to proceed with the objected-to transaction.

140.    Moreover, after counsel to HCG demanded that Defendant Rakin deposit the $3,582,000.00 into a THN bank account, Defendant Cohen Mohr defended the transaction as executed as representing the will of THN.  The failure to scuttle the transaction as planned and the willingness of Defendant Cohen Mohr to defend Abdul Rakin against the demand of HCG to deposit the funds into the THN bank account betray a state of mind evidencing malice toward THN.

141.    In addition, Defendant Cohen Mohr wrongfully represented its status as attorney in fact to THN and made its groundless assertion that Defendant Rakin was "duly authorized" to bind THN with full knowledge that HCG and counsel for HCG had challenged Defendant Cohen Mohr's authority as legal representative of THN and full knowledge of the fact that the money intended for THN had been improperly diverted to a bank account controlled by Defendant Rakin and/or THEC.

## PUNITIVE DAMAGES
### As to Defendant Rakin

142.    Plaintiff THN incorporates paragraphs 1-95, 112-136 into this request that punitive damages be assessed against Defendant Cohen Mohr.

143.    By converting the $3,582,000.00 intended for payment to THN for his own use – despite repeated objections by other constituents of THN, and by refusing to deposit the $3,582,000.00 into a THN bank account despite many requests by THN board member Rakin for him to do so, Defendant Rakin acted with actual malice towards THN.

26

## PRAYER FOR RELIEF

WHEREFORE, THN prays as follows:

A.      That this Court enter judgment against all Defendants jointly and severally in an amount equal to the damages sustained by THN;

B.      That this Court order immediate restitution of $3,582,000.00 that, because of Defendants' wrongdoing, was paid to Defendant Rakin and/or THEC and should have been paid to THN.

C.      That THN be awarded any and all other damages necessary to compensate for Defendants' wrong-doing;

D.      That THN be awarded its expenses and costs of suit, including reasonable attorneys' fees, to the extent provided by law or equity;

E.      That THN be awarded pre-judgment and post-judgment interest on all restitution ordered or monies awarded;

F.      That Defendant Cohen Mohr and Defendant Rakin pay the cost of any arbitration claim required to secure full and just payment by IRD with respect to its payment obligations under the Subcontract.

G.      That the Court order an accounting of Defendant Cohen Mohr to determine whether any of the monies received by Defendant Rakin, including but not limited to the $3,582,000.00 described in the preceding paragraphs have been transferred or paid to Defendant Cohen Mohr; and, in the event of such transfer or payment, order the disgorgement of such monies from Defendant Cohen Mohr and transferred to THN.

27

H.     That the Court order an accounting of Defendant Rakin and THEC to determine whether any monies that were diverted from THN have been transferred or paid to any other person, including but not limited to Defendant Cohen Mohr; and, in the event that such transfer or payment, order the disgorgement of such monies and transferred to THN.

I.     That THN be granted such other and any and all additional or further equitable or legal relief as may be determined by the Court to be just, equitable and proper.

Filed this November 3, 2015 by

/s/ Joseph A. Hennessey
Joseph A. Hennessey, Esq.
The Law Office of Joseph Hennessey, LLC
2 Wisconsin Circle, Suite 700
Chevy Chase, Maryland  20815
Telephone: (301) 351-5614
Email: Jhennessey@jahlegal.com

## **JURY DEMAND**

THN demands a trial by jury on all facts and issues so triable.


/s/ Joseph A. Hennessey


November 3, 2015